## MICHAEL QUINN *vs.* B. B. LEAKE & others.

### October Term, 1872.

PRACTICE—MOTION TO DISMISS A BILL FOR WANT OF EQUITY ON ITS FACE, WHEN IT LIES.—A motion to dismiss a bill for want of equity on its face will not lie if there be any equity in the bill although defectively stated.

*E. B. McClanahan*, for complainant.
*T. M. Steger*, for defendants.

THE CHANCELLOR:—This case comes before me upon a motion to dismiss the bill for want of equity on its face.

The facts are that on the 9th of July, 1870, the defendant B. B. Leake sold to the complainant a lot of land for $1600 cash, and conveyed it to him by deed in fee with covenants of seisin, warranty and against encumbrances, and the complainant went into possession, and has made improvements. On the 26th of July, 1872, he files this bill alleging that said lot is part of lot No. 26 in the Cockrill plan of lots, "to which complainant is *informed* that said Leake never had a title, which fact complainant has within the last few

days first learned." The bill further states that the "complainant is *informed* that the rear of this lot as conveyed takes in and covers about 40 feet or more of lot 27 which is the property of the defendant Roberts." It also contains this paragraph : "Complainant would further state and so charges that defendants Berry B, and Kate E. Leake have left the state of Tennessee, and are residing in the state of Kentucky, that defendant Berry B. practiced a wilful and premeditated fraud upon complainant, by falsely and designedly representing that he owned the land purchased by complainant as hereinbefore stated ; that he knew at the time and before said sale that he had no title to said property, and no right to sell the same or any part thereof ; that he got possession of complainant's money by misrepresentation and false and fraudulent pretences, which complainant relied upon in his said purchase as being true, and which defendant Berry B. knew to be false." Again he says : "Complainant has been greatly damaged and defrauded by the defendant Berry B. Leake, and is in imminent danger of being ejected from the lot which defendant Leake pretended to sell as aforesaid. Complainant has expended several hundred dollars in improving said property, in making permanent repairs of the buildings."

These are all the allegations of the bill which bear upon the complainant's case, and upon which he comes into this court for relief. The residue of the bill is occupied in describing the property and effects sought to be attached for the complainant's indemnity, and detailing the manner in which it has been conveyed, or is held.

The bill prays for attachment of the property described, and that a sufficiency thereof be subjected to the decree "to pay off the amount of the complainant's claim." The bill concludes with the usual prayer for "general relief."

The main objection relied upon by the defendant upon which to dismiss this bill for want of equity, is that the bill fails to show any cause of action, or, if it does show any, it is for unliquidated damages without stating any definite

amount, and for which the remedy is plain and adequate at law. Stress is laid, in the brief of the learned counsel for the defendant, upon the fact that the bill does not, at the outset, aver a want of title, but says that the complainant has been "*informed*" that the defendant Leake never had a title. Also, upon the fact that the complainant only speaks generally of his "claim," without specifying what it is, and asks for no specific relief.

It must be admitted that this bill, like too many filed in the hurry of business and to meet a supposed pressing exigency, is open to criticism, and does deal in generalities of a very indefinite character. Whether the allegations referred to could successfully resist a demurrer, it is not necessary to determine. The defendant has seen proper to move to dismiss for want of equity, and this motion raises a very different issue.

The provisions of the Code § 4386, that a bill may be dismissed, on motion of the defendant, for want of equity on its face, was a new provision of statute law based upon the practice of the courts of chancery of this state as illustrated in *Thompson* v. *Paul*, 8 Hum. 114; *Mayes* v. *Biggs*, 3 Head, 36, and *Earles v. Earles*, 3 Head, 366. No construction has yet been put upon it by the supreme court, while that court has, on one or two occasions, since the war and previous to the adoption of the new constitution, taken occasion to say orally that an assignment of a cause of demurrer in the same words, namely, that there was no equity on the face of the bill, although expressly authorized by § 4388 of the Code, was too general, and would not be a good assignment. I am not aware of any published or written opinion of the court in which this point has been authoritatively ruled. It appears to me that the difficulty has grown out of the vague meaning which seems to have been attached by the profession to that clause of the Code, and the consequent loose practice under it. "The want of equity on the face of the bill," if understood to the extent to which the decisions have gone, is, it seems to me, a good ground for a motion to dismiss, or

as a cause of demurrer. It is only because we lose sight of the actual decisions, and fancy that there is more virtue in the words than there really is, that we are lead astray. It is so much easier to make a motion to dismiss, than to write out a demurrer with proper specification of causes, that we are tempted to take "the primrose path." If it be found that nothing is to be gained by it, it will be resorted to much less frequently. I think this desirable for two reasons. In the first place, those who resort to the motion do so with the expectation, if it be overruled, to demur. But this would be to allow two dilatory proceedings in succession, contrary to the inclination of the courts against such forms of defence. Without undertaking to decide a point not now before me, it may be worth while to suggest, that it is doubtful how far the courts will sustain such a practice, and especially where the same matters are sought to be raised by the demurrer, as were relied upon on the motion to dismiss. In the second place, if the motion to dismiss be refused, there can be no appeal as there may be, in proper cases, where a demurrer is overruled.

The motion to dismiss for want of equity only lies in those cases in which the court may, *mero motu*, at any stage of the proceedings, dismiss, and that is when, admitting all the facts stated in the bill, *whether well or defectively pleaded*, the complainant is entitled to no relief. The court may well say in such cases, whether the objection be made by motion or demurrer or comes from the court itself, that there is no use to put the parties to any further expense. But it is obvious that this contingency does not arise when a case proper for equitable relief appears on the face of the bill, which happens to be defectively stated. And so our supreme court expressly held in the case of *Thompson* v. *Paul*, 8 Hum. 114. That was a bill for the rescision of a contract of sale of land upon the ground, very vaguely averred, that the defendants had "no registered or legal title" to the land. The Chancellor thought this allegation not sufficient and dismissed the bill. The supreme court

while admitting that "the matter constituting the equity of the bill is inartificially stated," held that a defective statement was not sufficient to authorize the dismissal  The bill must contain "no matter of equity whatever," to fall under the ban of having no equity on its face.

Under the organization of our courts in this state, it is very important to draw this marked line of distinction.  Our democratic usages forbid us to require from our lawyers all the accuracy and nicety of finished draftsmen.  The public interests demand at the hands of the courts an attention to matters of substance, and a liberal practice in matters of form, unless the defects of form are pointed out in those modes, allowed by the rules of pleading and practice of courts, which leave the delinquent party an opportunity to amend, subject only to the penalty of costs.

The bill before us is certainly defective in form.  It is clearly not sufficient to allege that the complainant has been "*informed*" of an essential matter to the relief he seeks.  The law demands that parties should put themselves to the trouble to ascertain facts before they come into court, and requires positive averments, and if the clauses referred to stood alone the bill would have been clearly demurrable. The clause by which these defects are remedied is far from unexceptionable, but it is enough under the rule laid down. The bill states, "that he (defendant Leake) knew at the time and before said sale that he had no title to said property, and no right to sell the same or any part thereof; that he got possession of complainant's money by misrepresentation and fraudulent pretences, which complainant relied upon in his said purchase as being true, and which Berry B. knew to be false."  This is very general, but it is far more specific than the language held sufficient in *Thompson* v. *Paul*.

The gravamen of the bill, however defectively stated, is, that the defendant had no title to the land when he sold, and fraudulently represented that he had.  If true, there is a clear breach of the warranty of seisin.  Our courts have

repeatedly held that a covenant of seisin made by one who had no title gives a right of action so soon as the covenant is made, and no eviction, as in covenant of warranty, is necessary. *Ingram* v. *Morgan*, 4 Hum. 66 ; *Woods* v. *North*, 6 Hum. 309 ; *Kincaid* v. *Britton*, 5 Sneed, 119 ; *Barret* v. *Clark*, 5 Sneed, 435.

It is true that the remedy on the covenant of seisin is perfect at law, and that a court of equity will not actively interpose unless upon some distinct ground of equitable jurisdiction. One of these grounds, it seems to be conceded by our supreme court is, in some cases, the failure of the vendor to communicate to the vendee a defect of title at the time of sale. 4 Hum. 66, and 6 Hum. 309. Whether the principle thus conceded would apply where the contract was executed, and the right of action would equally exist whether there was fraud or not, and where no rescission is asked but only damages for the breach, might well be questioned.

But this is an attachment suit based, apparently, upon the non-residence in this state of the defendant Leake, and, in that view, would be sustainable under § 3461 of the Code, even if the complainant's demands were of a purely legal nature. Any objection to the attachment, it is obvious, cannot be entertained on this motion, except the objection that the bill contains no statutory ground for its issuance. But non-residence is a good statutory ground, the truth of which is conceded by the motion. Other objections, if any, to the attachment must be raised in a different mode.

The bill is not filed for a rescission of the contract of sale, nor does it specify either the amount or character of the complainant's " claim." These may be grave objections in some aspects, and upon some applications, but not upon the motion now under consideration. At most they only show a defective and, to use the word of our supreme court, "inartificial" statement of a real cause of action. If the allegations of the bill be sustained, the complainant would be entitled, in the words of Judge McKinney in 5 Sneed, 123, "to recover damages, the measure of which may be the

consideration money and interest, or a less amount, or even nominal damages according to the nature and extent of the breach in the particular case.''

Objection is also made to the want of a proper prayer for specific relief. This is, of course, a matter of form which cannot be reached by this motion. In *Eaton* v. *Breathett*, 8 Hum. 534, it was held, under the provisions of an attachment law substantially carried into the Code, that no prayer for relief whatever was necessary, the law itself prescribing the relief. But the prayer in this case, although ''inartificially stated,'' is sufficient. It prays that the property attached, or '' a sufficiency to pay off the amount of complainant's claim,'' be decreed for the satisfaction thereof. There is also a prayer for general relief.

The motion of the defendant must be disallowed.